**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
DARYL ALTMAN and ROBERT SHEPARD,

                 Plaintiffs,

      - against -

THE INCORPORATED VILLAGE OF LYNBROOK
ALAN C. BEACH, HILARY H. BECKER, MICHAEL
N. HAWXHURST, ANN MARIE REARDON, *each
individually and who serve collectively as the Board
of Trustees of The Incorporated Village of Lynbrook*,
THE BOARD OF TRUSTEES OF THE
INCORPORATED VILLAGE OF LYNBROOK,
PETER K. LEDWITH, *Lynbrook Village Attorney,
individually*, BRYAN STANTON, *Lynbrook Village
Building Department Supervisor, Individually*,
TERRANCE DALY, *Lynbrook Village Building
Inspector, individually*, NAME UNKNOWN CURTIS,
*Lynbrook Village Building Inspector, individually*,
NAME UNKNOWN TAYLOR, *Lynbrook Village
Code Enforcement Official, individually*, WALTER
BLOHM, and JOHN DOE NUMBERS 1 THROUGH 5,
*said individuals being not yet having been ascertained*,

                 Defendants.
-------------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

CV 18-4984 (SJF) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.     **PRELIMINARY STATEMENT**

     Plaintiffs Daryl Altman ("Altman") and Robert Shepard ("Shepard") (collectively, the

"Plaintiffs") commenced this action against Defendants Incorporated Village of Lynbrook (the

"Village"), the Board of Trustees of the Incorporated Village of Lynbrook (the "Board"), and

numerous Village officials, Alan C. Beach, Hilary H. Becker, Michael N. Hawxhurst, Ann Marie

Reardon, Peter K. Ledwith, Bryan Stanton, Terrance Daly, Name Unknown Curtis, Name

Unknown Taylor, and Walter Blohm (collectively, the "Defendants"). *See generally* Complaint

("Compl.") [DE 1]. Plaintiffs allege Defendants' removal of honeybees and a beehive from their

property pursuant to an administrative search warrant violated the United States and New York Constitutions.  Plaintiffs have also asserted common law trespass and conversion claims. Defendants moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), or, for judgment on the pleadings under Rule 12(c) or conversion to a motion for summary judgment pursuant to Rule 56.  *See* Memorandum of Law in Support of Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) ("Defs.' Mem.") [DE 25-1].  Plaintiffs oppose the motion. *See generally* Memorandum of Law in Opposition to the Defendants' Motion to Dismiss, F.R.C.P. Rule 12(b)(6) ("Pls.' Opp'n") [DE 26-1].

Judge Feuerstein referred Defendants' motion to this Court for a Report and Recommendation as to whether the motion should be granted.  *See* July 24, 2019 Electronic Order.  For the following reasons, this Court respectfully recommends to Judge Feuerstein that Defendants' motion to dismiss be DENIED.

## II.   BACKGROUND

### A.   Factual Background

The following factual allegations have been taken from the Complaint.  All facts alleged by Plaintiffs are assumed to be true for purposes of deciding the motion to dismiss and are construed in a light most favorable to Plaintiffs as the non-moving parties.  *See, e.g.*, *LaFaro v. N.Y. Cardiothoracic Grp.*, 570 F.3d 471, 475 (2d Cir. 2009); *Matthews v. City of N.Y.*, 889 F. Supp. 2d 418, 425 (E.D.N.Y. 2012).

Altman owns the real property known as 44 Rowe Avenue in Lynbrook, New York (the "Property").  Compl. ¶ 12.  The Property is a single-family residence which is "residentially zoned" in the "Dwelling A" zoning district, with a yard that is fenced along its rear lot line and northwest side.  *Id.* ¶ 30.  Altman lives at the Property with Shepard, her life partner of more than

18 years. *Id.* ¶¶ 11-12.   The Village is a municipality with an office at One Columbus Drive, Lynbrook, New York. *Id.*  ¶ 13.   The Board is the governing entity of the Village and is comprised of the mayor and trustees of the Village. *Id.* ¶ 19.   During the time period relevant to the Complaint, the remainder of the named Defendants were Village officials.   Beach, Becker, Boccio,[1] Hawxhurst, and Reardon were Village Trustees, *id.* ¶¶ 14-18, Ledwith was the Village Attorney, *id.* ¶ 20, Stanton was the supervisor of the Village's Building Department, *id.* ¶ 21, Daly and Curtis were building inspectors, *id.* ¶¶ 22-23, Taylor was a Village police officer, *id.* ¶ 24, and Blohm was a "hired agent of the Village . . . for the purpose of removing the beehive in question," *id.* ¶ 25.

In 2015, Plaintiffs decided to begin beekeeping as a hobby. *Id.* ¶ 30.   To educate themselves about beekeeping, they conducted computer and book research, attended seminars, and joined a local beekeeping association. *Id.*   Altman contacted the Village twice in 2015 to learn if there were any requirements to keep honeybees. *Id.* ¶ 31.   During the first of these conversations on July 29, 2015, Altman spoke to Curtis, a building inspector, who was unaware of any such requirements. *Id.*   Curtis advised Altman that she would get back in touch with her, but Altman did not receive a return call. *Id.* ¶¶ 31, 34.   Altman contacted the Village again on August 5, 2015 seeking the same information. *Id.* ¶ 34.   This time, Curtis advised that there were regulations related to beekeeping which would be provided to her. *Id.*   However, Altman did not receive any further information. *Id.*

Since Plaintiffs never received any information or regulations which would suggest beekeeping was not permitted in the Village, they continued to research their new hobby

---

[1]    Boccio was dismissed from this case on February 22, 2019. *See* Stipulation and Order Dismissing Robert Boccio [DE 21].

throughout the remainder of 2015 and into 2016.  *Id.* ¶ 35.  Then, in April 2016, Plaintiffs

purchased a beehive, honeybees, and other materials to begin beekeeping as it was "a time of

year normally suitable for the initiation of beekeeping and beehives coming out of hibernation."

*Id.*  From that point until May 2017, Plaintiffs tended their honeybees "without incident, and

without comment from the Village."  *Id.*

In May 2017, Plaintiffs allege that the Board decided to eliminate Plaintiffs' beehive and

directed Building Department Supervisor Stanton to remove it.  *Id.* ¶ 36.   One of the building

inspectors, Terrance Daly, whom will Stanton supervises, along with Curtis (and possibly others)

went to the Property while Plaintiffs were not home to perform unscheduled "inspections" due to

concerns about a Village code violation.  *Id.*  Two of these inspections took place on May 8 and

June 2, 2017.  *Id.*  In between those inspections, on May 18, 2017, Daly visited the Property to

inspect the grounds and curtilage of the premises "to determine the presence of a beehive threat."

*Id.* ¶ 38.  "Daly left an orange door-handle 'Notice!' related to an alleged 'Beekeeping –

Violation of Lynbrook Code Sec. 185-7(A).'"[2]  *Id.*  Altman called the Village the next day to

discuss the matter.  *Id.* ¶ 40.  She spoke with Daly and asked what law prohibited beekeeping or

what other reason was there requiring the hive to be removed from the Property.  *Id.*  However,

Daly did not offer any explanation and advised Altman that the hive was unauthorized and had to

be removed.  *Id.*  Altman explained that she was unable to remove the hive as she was leaving on

an extended out-of-town trip.  *Id.*

On June 2, 2017, Daly made another attempt to inspect the Property and left a second

"Notice!," which stated as follows:  "Follow Up Inspection Re:  Bees.  Please call Building

Department 599-8828."  *Id.* ¶ 41.  On June 8, 2017, Stanton called Altman and directed her to

_____

[2]        The Court will refer to the Village of Lynbrook Code as the "Village Code."

remove the hive, stating there was no way the hive could remain on the Property. *Id.* Plaintiffs then received a letter from Daly on June 9, 2017 stating that "the violation of beekeeping was still occurring at the Property" and identifying Village Code § 185-7(A). *Id.* ¶ 42. If the beehive and bees were not removed from the Property by June 16, 2017, the June 9 letter stated that the beehive and bees would be "relocated by the Village of Lynbrook at [Plaintiffs'] expense and a summons being issued" for a Village Code violation. *Id.* The letter advised Plaintiffs to contact the Building Department with any questions. When they did so, they heard a pre-recorded answer and left a voice message asking to speak with someone. Defendants did not reply. *Id.*

 Based on the threat that the Village would attempt to relocate their beehive, Plaintiffs engaged counsel to meet with the Village to resolve these issues. *Id.* ¶ 43. On June 20, 2017, Plaintiffs' counsel drafted a letter to the Village Administrator, John Giordano, which informed him that a honeybee hive was not in violation of Village Code § 185-7(A) nor was there any "infestation" at the Property as that term is understood in the New York Property Maintenance Code. *Id.* The letter notified Giordano that "the keeping of an apiary or honey beehive was considered to be 'agriculture' under the State Agriculture and Markets Law and, therefore, was an action fully authorized under the zoning code of the Village because 'farming' is an authorized use within the 'residence' or 'dwelling' zoning district in which the Homeowners' real property lay." *Id.* ¶ 44. Plaintiffs' counsel concluded his letter with a request to meet with the Village's counsel. *Id.* ¶ 45.

Two days after Plaintiffs' counsel sent this letter to Giordano, on June 22, 2017, Daly and Village Attorney Ledwith obtained an administrative search warrant (the "Warrant") from the appointed Associate Village Justice, "who on information and belief is the law partner and son-in-law" of Ledwith. *Id.* ¶ 46. The application for the Warrant was affirmed by Ledwith (the

5

"Ledwith Affirmation") and was accompanied by an affidavit in support of the warrant signed by

Daly (the "Daly Affidavit"), both of which were dated June 22, 2017.  *Id.*  According to the

Complaint, the Daly Affidavit is based upon an

> undated "complaint of Mrs. Kalanthroff, the owner of 10 Baylis Place"; "my own [warrantless] inspection of [the premises on] 5/20/17" and his: "observations of one beehive and swarming bees in and about the yard of 44 Rowe Avenue and the likely swarming of bees into adjoining properties around Rowe Avenue creating a hazard to the residents' health, safety and welfare."

*Id.* ¶ 47 (alterations in original).  The Warrant provided that

> a police officer, "along with a member of the Lynbrook Building Department and any independent contractor deemed necessary," were authorized to enter the premises: "for the purpose of an inspection of the premises inclusive of the backyard, and adjoining structures, if necessary, for the purpose of ascertaining the existence of a violation of Village Code Chapter 185 (Property Maintenance) at § 185-7(a) for the maintenance and harboring of insects upon said property and, if said condition continues to exist, for the prompt removal of same."

*Id.* ¶ 49.

On June 26, 2017 at 8:15 a.m., Daly and Village Police Officer Taylor went to the

Property and asked Altman if they could enter and whether the beehive was still there.  *Id.* ¶ 72.

Altman informed Daly and Taylor that the hive was still on the Property, that they could not

enter, and that they should speak with Plaintiffs' counsel.  *Id.*  Daly and Taylor left the Property

and Altman immediately contacted her counsel to inform him of their visit.  *Id.*  Counsel then

faxed a letter to Giordano at approximately 9 a.m. to (1) remind him of the prior letter, (2) advise

that if Village employees entered the Property it would be considered a trespass, and (3) request

again to speak with the Village's counsel.  *Id.* ¶ 73.  Later that morning, after both Plaintiffs went

to work, Daly and Taylor returned to the Property with the Warrant and with Blohm, who was

hired by the Village to remove the beehive.  *Id.* ¶ 74.  These three Defendants then entered the

6

backyard of the Property, searched for and found the beehive, and seized it. *Id.* Plaintiffs did not learn of Defendants' actions until a neighbor called Shepard to inform him of what transpired. *Id.* ¶ 75. When Altman returned home, she found a copy of the Warrant, the Ledwith Affirmation, the Daly Affidavit, and a "receipt" notice taped to her door which was signed by a police officer "Gizzi." *Id.* Two days later, a copy of the Warrant, the "supporting documentation upon which it was issued," and an "Administrative Search Warrant Return" were left in Plaintiffs' mailbox at the Property. *Id.* ¶ 76.

On July 7, 2017, Daly sent Plaintiffs a letter stating that the Village had "removed the bees and beehive causing a violation" at the Property and that the Village incurred a cost of $308.50 in doing so. *Id.* ¶ 77. The Village sought to collect this fee and threatened to assess the cost against the property as part of Plaintiffs' real estate taxes. *Id.* On August 21, 2017, a Notice of the Claim was served upon the Village Administrator for the Village of Lynbrook. *Id.* ¶ 78. Plaintiffs then appeared for oral examination on October 16, 2017 pursuant to Section 50-h of the New York General Municipal Law. *Id.*

## B.    Relevant Village Code Provisions

Relevant portions of the Village of Lynbrook Code provide in pertinent part as follows.

### 1.    *Property Maintenance and Zoning*

Section 185-2 Definitions.  **Infestation**:  "The presence of insects, rodents, vermin or other pests."

Section 185-7(A) Infestation and Screening.  "Grounds, buildings and structures shall be maintained free of insect, vermin and rodent harborage and infestation.  Methods used for exterminating insects, vermin and rodents shall conform to generally accepted practice."

Section 185-9 Responsibilities of Occupants.

An occupant of the premises shall be responsible for compliance
with this chapter in regard to the following:

7

. . .
B.  Maintenance of that part of the premises which he occupies or
controls in clean, sanitary and safe condition, free of litter, rubbish,
refuse, garbage, junk and infestation.
. . .
F.   Extermination of insects, rodents or other pests within his
premises.

### 2.      *Administrative Search Warrants – Chapter 59*

Section 59-2 Definitions.

**Administrative Search Warrant**
A written order of a Judge authorizing the inspection of any
property, place or thing, and the photographing, copying or
recording of the condition of any property or documents related
thereto, to determine or to prove the existence of a violation of any
provision of the Village Code section.

**Notice to Owner or Occupant**
In an instance where an owner or occupant fails or refuses to permit
an administrative inspection by an authorized Village representative
under a Code provision requiring such an inspection, the Village
may apply for an administrative search warrant.  In cases where a
local law does not specifically provide for an administrative
inspection, but, where such inspection is required for the good and
welfare of the community, and, where an owner or occupant fails to
or denies entry upon the premises for the purpose of such
administrative inspection by an authorized Village official, the
Village may apply to the court for an administrative search warrant,
provided a written notice is served by certified mail, return receipt
requested to the last known address of the owner of the premises or
to the occupant of the premises that an administrative search warrant
may or will be requested of the court. Such notice must state that:

A. An administrative search warrant may be issued where
permission to conduct such a search to an authorized Village
employee requesting entry upon the premises for such
inspection has been denied;
B. The description of the specific scope of the inspection is
detailed; and
C. The limitation of the Village's inspector's authority to
inspect and act as defined by the pertinent Village Code
chapter and the relevant subject matter of the inspection.

8

Section 59-3 Application for Warrant.

> The Village Attorney or designee or any department head of the Village of Lynbrook is authorized to make an application to the Village Justice Court for the issuance of an administrative search warrant in order to conduct an inspection of any premises where the owner or occupant refuses or fails to allow an inspection of the premises and where there is reasonable cause to believe that a violation of the Code of the Village of Lynbrook is present or has occurred.

Section 59-4 Execution of Warrant.

> An administrative search warrant shall be executed by a Lynbrook police officer; however, one or more designated Code Enforcement Officials may accompany the officer to assist in the administrative inspection, the photographing of the condition of the subject premises, copying or recording of said conditions or documents related thereto.

Section 59-5 General Provisions.

> Such administrative search warrant shall be based upon the reasonableness of the inspection in balancing the reasonable public interest in having the Village Code provisions enforced against the owner's or occupant's rights of privacy which balancing shall be described to the Court in the application for the warrant submitted by the department head or the Village Attorney.

**C.    Procedural Background**

Plaintiffs commenced this action on September 4, 2018.  With regard to the bases for jurisdiction, Plaintiffs cite 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 2201 and 2202 (the Declaratory Judgment Act) and 42 U.S.C. § 1983 (civil action for deprivation of rights).  Plaintiffs also invoke the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  The Complaint asserts unnumbered causes of action, which are largely premised upon overlapping violations of the United States and New York Constitutions.  Plaintiffs' causes of action are broken into eight categories:  (1) "denial of procedural due process;" (2) "denial of substantive due process;" (3) "unreasonable search and seizure;" (4) "violation of privacy;"

(5) "uncompensated taking;" (6) "trespass to real property;" (7) "trespass to chattels;" and (8) "conversion." *See* Compl. ¶¶ 79-164. The Court summarizes each of these counts as follows, beginning with the constitutional claims.

With respect to the "procedural due process" claim Plaintiffs allege, *inter alia*, that Defendants failed to comply with several sections of the Village Code pertaining to administrative search warrants, *i.e.*, §§ 59-2, 59-3, 59-4, 59-5; incorrectly interpreted an "infestation" of insects to determine the beehive at the Property was a violation of Village Code; used this violation "as a pretext" to obtain a warrant; and did not afford Plaintiffs a pre-deprivation or post-deprivation hearing, which is not even provided for under the Village Code. Compl. ¶¶ 80-85, 88. The "substantive due process" claim is likewise based on Defendants' alleged failures to comply with Village Code § 59-2 by not providing Plaintiffs with notice that an administrative search warrant would be sought and by failing to provide a pre- or post-deprivation hearing "in a time, place, and manner reasonably calculated to be protective of and provide due process to the Homeowners privacy and property rights." *Id.* ¶¶ 102-03.

As to the "unreasonable search and seizure" claim, Plaintiffs assert: (1) Chapter 59 of the Village Code pertaining to administrative search warrants "does not provide adequate 4th Amendment protections" because it does not guarantee a pre-deprivation hearing, *id.* ¶¶ 109-12; (2) Defendants' application for the Warrant does not provide probable cause because the Daly Affidavit is "based on stale, uncorroborated, and ill-informed hearsay;" Daly's inspection of the Property was performed unlawfully; and Daly and Ledwith's interpretation of an "infestation" is contrary to New York State Agriculture and Markets Law ("NY AML" or "AML"), *id.* ¶ 113-15; (3) the Warrant does not comply with Chapter 59 requirements because it does not "reasonably describe or restrict the areas of [the Property] that are necessary to search for the beehive in

10

question," *id.* ¶¶ 118; (4) Defendants exceeded the scope of the Warrant because "the only command in the Warrant with regard to personal property that arguably showed the existence of an insect infestation was that it be 'removed'" but Defendants "removed the beehive and its contents and then gave the property over to their agent to remove it to the Queens County Museum where all bees, brood, comb, honey, beeswax" was taken, effectively destroying the beehive, *id.* ¶¶ 121-23; and (5) Defendants did not provide required Fourth Amendment protections by failing to notify Plaintiffs of their intent to seek an administrative search warrant nor providing them a post-deprivation hearing, *id.* ¶¶ 124-25.  The Court notes that included in Plaintiffs' "Prayer for Relief" is, among other things, a request to declare the provisions of Chapter 59 of the Village Code "which purport to authorize the issuance of administrative search warrants … constitutionally infirm and that a permanent injunction should issue barring their future use." *Id.* at pages 37-78.

As to the "violation of privacy" claim, Plaintiffs allege that Daly's May 20, 2017 inspection of the Property as well as both of the June 26, 2017 entries onto the Property by Daly, Curtis, and Blohm violated Plaintiffs' privacy rights in their home. *Id.* ¶¶ 129-35.  Regarding the "uncompensated taking" claim, Defendants removed from the Property a beehive and its contents, including "bees, beeswax, honey and the associated structures making up the hive." *Id.* ¶ 137.  "No bees, larvae, eggs, honey, or beeswax" were returned to Plaintiffs and "the beehive box elements, as well as some new internal elements of the hive" which Defendants did return cannot be used by Plaintiffs to raise honeybees. *Id.* ¶¶ 140-41.  Plaintiffs did not receive any compensation from Defendants for these items. *Id.* ¶ 142.

Turning to the common law claims, Plaintiffs allege that Defendants committed a "trespass to real property" by entering the Property twice on June 26, 2017 after Plaintiffs'

11

counsel sent letters stating that Village employees and officials were not authorized to do so. *Id.* ¶¶ 145-48. Further, the Complaint asserts that the Defendants' second entry onto the Property on June 26, 2017 was unlawful because it was based on an invalid warrant. *Id.* ¶ 149. The claim for "trespass to chattels" focuses on Defendants' removal of Plaintiffs' personal property as unlawful based on the invalidity of the Warrant. *Id.* ¶¶ 153-57. Lastly, Plaintiffs' claim for conversion is based upon the Defendants' rendering the beehive unusable and giving away or destroying the bees, beeswax, comb, and honey from the hive. *Id.* ¶¶ 160-63.

Two answers were filed on October 10, 2018. The first of these answers ("Answer I") was filed on behalf of the Village, Beach, Becker, Boccio, Hawxhurst, Reardon, the Board, Ledwith, Stanton, Daly, and Curtis. *See* Answer I [DE 9] at 1. The second answer ("Answer II") appears to be duplicative of the first filed answer, with the exception that the second answer has discovery attached to it. *See* Answer II [DE 10] and Discovery Materials attached beginning at page 8. A third answer ("Answer III") was filed on December 15, 2018 on behalf of Walter Blohm. *See* Answer III [DE 15]. On January 9, 2019, an amended answer was filed on behalf of all Defendants. *See* Amended Answer ("Am. Answer") [DE 16]. The Amended Answer removed Boccio, who was terminated as a defendant, *see* 1/8/2019 Minute Entry, and is filed on behalf of all other Defendants, including Blohm. Am. Answer at 1. All of these answers included failure to state a claim upon which relief can be granted as an affirmative defense. Answer I at ¶ 26; Answer II at ¶ 26; Answer III at ¶ 26; Am. Answer at ¶ 26.

On June 11, 2019, Defendants served their motion to dismiss pursuant to Rule 12(b)(6) which seeks alternative relief under Rule 12(c) for judgment on the pleadings or conversion to a summary judgment motion under Rule 56. Notice of Motion to Dismiss [DE 25]; Memorandum of Law in Support of Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) ("Defs.' Mem.")

[DE 25-1]; Declaration of Gregg D. Weinstock, Esq. In Support of the Defendants' Motion to Dismiss ("Weinstock Decl.") [DE 25-2]; Transcript of Section 50(h) Examination of Daryl Altman ("Altman 50(h) Tr.") [DE 25-5]; Transcript of Section 50(h) Examination of Robert Shepard ("Shepard 50(h) Tr.") [DE 25-6].  Plaintiffs' opposition to the motion consists of the Declaration of J. Lee Snead, Esq. in Opposition to the Motion to Dismiss ("Snead Decl.") [DE 26]; Memorandum of Law in Opposition to the Defendants' Motion to Dismiss, Rule 12(b)(6) ("Pls.'Opp'n") [DE 26-1]; Affidavit of Daryl Altman in Opposition  ("Altman Aff.") [DE 26-2], annexed as Ex. 1 to Pls.' Opp'n; Property Maintenance Code of New York State ("NYS Prop. Maint. Code") [DE 26-3], annexed as Ex. 2 to Pls.' Opp'n; July 12, 2019 Letter from Robert Somers, Manager of New York State Farmland Protections Unit ("Somers Letter") [DE 26-4], annexed to the Snead Decl. as Ex. 3; Proposed Discovery Requests [DE-26-5]. Defendants served a reply.  *See* Reply Declaration of Gregg D. Weinstock, Esq. in Further Support of Defendants' Motion to Dismiss ("Weinstock Reply Decl.") [DE 27].

### D.    The Parties' Positions

#### 1.    *Defendants' Motion to Dismiss*

Defendants' argument opens with a discussion of the constitutionality of Village Code § 185.  Defs.' Mem. at 7.  Defendants submit that this section is presumptively constitutional and "fits into the explicit legislative findings of the protection of the health, safety, and welfare of the residents of the Village and seeks to maintain standards of its community and property."  *Id.* at 9. Particularly, Defendants contend that the Code's definition of "infestation" set forth in § 185-2 (*see supra* Section II.B.1) "leaves no room for ambiguity and does not allow contemplation for the purpose for which the insects are present.  Rather, the mere presence of any insect violates this section of the Code."  Defs.' Mem. at 11.  Defendants then respond to arguments they

anticipate Plaintiffs to make, which is that even if Plaintiffs argue that beekeeping is permissible under the NY AML and applicable zoning district, and even if the bees are "useful," the Village Code still prohibits their presence on the Property. *Id.* at 12. Defendants then reference information not contained in the Complaint to dispute Plaintiffs' account of their beehive to demonstrate a Code violation. *See id.* "[I]t must be noted that the circumstances of this matter involve much more than a mere presence of bees on the property . . . . Mrs. Kalanthroff's second communication to the Village indicated that the bees were found to have infested her children's play structure and caused damage to her garage." *Id.* As such, the Warrant is not solely based on hearsay as Plaintiffs contend, but based on Ms. Kalanthroff's complaints and Daly's "observations of one beehive and swarming bees in and about the yard . . . and the likely swarming of bees into adjoining properties . . . creating a hazard to the residents' health, safety and welfare." *Id.* at 17 (quoting Compl. ¶ 47). Defendants conducted an investigation and determined that Plaintiffs were in violation of Village Code § 185, and this information was part of the evidence that the Village Justice considered when deciding to issue the Warrant. *Id.* at 16-17.

Defendants' next argument addresses Plaintiffs' procedural due process claim. *Id.* at 13. As to Plaintiffs' allegations that "there was no notice" of the Village's intent to seek an administrative warrant nor a "demand" to inspect the Property in accordance with Village Code § 59-2, "it is the Village's contention that the circumstances surrounding this matter did not require an administrative inspection, and rather an inspection required for the good and welfare of the community." *Id.* at 14. In addition, Defendants argue that Plaintiffs were notified of each inspection and of their intent to remove the beehive if a Code violation was found. *Id.* at 14-15.

### 2.   *Plaintiffs' Opposition*

As an initial matter, the Court must address the procedural defects in Plaintiffs' opposition papers. Plaintiffs' counsel submitted a 23-page attorney declaration (*see* Snead Decl.) in addition to his 17-page memorandum of law (*see* Plaintiffs' Opp'n) in a rather transparent attempt to circumvent Judge Feuerstein's Individual Rules which limit the length of memoranda of law to 25 pages. *See* Judge Feuerstein Individual Practice Rule 4.G ("Except for the letter motions set forth herein, which are limited to three (3) pages, all motion briefs, including reply briefs, are to comply with the Court's Local Rules and are limited to twenty-five (25) pages."). Unlike the typical attorney affirmation or declaration, "which simply attaches and identifies exhibits for the Court," Attorney Snead's Declaration consists of factual assertions and legal arguments regarding Defendants' proffered arguments. *See Dejana Indus. Inc. v. Village of Manorhaven*, No. 12-CV-5140, 2015 WL 1275474, at *2 (E.D.N.Y. Mar. 18, 2015); *Dell's Maraschino Cherries Co. v. Shoreline Fruit Growers, Inc.*, 887 F. Supp. 2d 459, 465 n.3 (E.D.N.Y. 2012) ("Placing legal argument in an affidavit is plainly improper. . ."). The Snead Declaration is entirely argumentative and even contains cross-citations to Plaintiff's own memorandum of law to elaborate on the positions taken. Plaintiffs' memorandum likewise refers the Court back to the Snead Declaration. In addition, neither the Snead Declaration nor Plaintiffs' memorandum contain a background section and refer the Court to the Altman Affidavit attached as a counterstatement to Defendants' recitation of the facts. Thus, Plaintiffs' counsel would have the Court flip-flop between the Snead Declaration, Plaintiffs' memorandum, and the Altman Affidavit to understand the full picture of Plaintiffs' argument. This type of declaration is improper and inadmissible. *See Callari v. Blackman Plumbing Supply, Inc.*, 988 F. Supp. 2d 261, 266 (E.D.N.Y. 2013) (declining to consider lengthy attorney declaration in

addition to memorandum of law); *Great Atlantic & Pacific Tea Co., Inc. v. Town of East Hampton*, 997 F. Supp. 340, 346 n.1 (E.D.N.Y. 1998); *Perpall v. Pavetek Corp.*, 12-cv-0336, 2018 WL 2390123, at *1 n.1 (E.D.N.Y. May 25, 2018).

Further, under Local Civil Rule 7.1, legal argument must be set forth in a memorandum of law, not in an attorney affirmation. *See* Local Civ. R. 7.1(a) (stating that all motions "shall include ... [a] memorandum of law, setting forth the cases and other authorities relied upon in support of the motion" and "[s]upporting affidavits and exhibits ... containing any factual information and portions of the record necessary for the decision of the motion"). *See Dejana*, 2015 WL 1275474, at *3. Accordingly, the Court declines to consider the Snead Declaration here.

Turning to the substance of Plaintiffs' opposition to the motion to dismiss in their memorandum of law, Plaintiffs submit that Defendants provided "no factual allegations of anyone 'with knowledge' that would counter those made in the Complaint." Pls.' Opp'n at 2. Plaintiffs assert certain procedural deficiencies with Defendants' motion to dismiss, specifically that the motion is untimely because Defendants filed it after having answered the Complaint. *Id.* at 2-3. Plaintiffs generally argue that "the Complaint is very particularized and sufficient factual content is provided to permit reasonable inferences that the defendants are liable for unlawful conduct." *Id.* at 4. Plaintiffs then contend that Village Code § 185's definition of "infestation" is unconstitutional and "void for vagueness with regard to its application to the keeping of beehives." *Id.* at 5. According to Plaintiffs, New York Agricultural Markets Law § 174 "holds honey bees as not being pests because of their clearly beneficial uses to the state as the 'state's useful bees.'" *Id.* (citing N.Y. AGRIC. MKTS. LAW § 174 (McKinney)). Further, Plaintiffs submit that "no case decision in New York has indicated that honey bees are an 'infestation' or

otherwise are subject to being destroyed other than after an order by the Commissioner of Agriculture.  Indeed, in federal law, 'infestations' with relation to honey bees are discussed in terms of pests infesting a colony of honey bees." *Id.* at 5-6.  Plaintiffs believe that interpreting "infestation" to encompass the keeping of bees is unreasonable in light of "the common dictionary definition of 'infestation' which connotes healthy things." *Id.* at 6. (footnote omitted). Turning to the validity of the Warrant and Defendants' compliance with Village Code § 59-2. Plaintiffs submit that there are clear issues of fact pertaining to what notice Defendants provided to Plaintiffs of their intent to seek a warrant as well as "the breadth of the notice and inspection procedures" which Defendants employed. *Id.* at 7.

With respect to construing Defendants' motion as one under Rule 12(c), Plaintiffs contend that pleadings are liberally construed and Rule 12(c) motions are disfavored in civil rights cases because such actions are inherently fact-based. *Id.* at 8.  The remainder of Plaintiffs' memorandum is styled as opposition to Defendants' purported motion for summary judgment. Plaintiffs begin with a procedural attack, arguing that Defendants did not submit a Local Rule 56.1(a) statement, which, in and of itself is a sufficient basis to deny the motion. *Id.* at 10-11. Plaintiffs then contend that the motion is not adequately supported because it is only accompanied by an attorney declaration and a memorandum of law. *Id.* at 12.  As to whether issues of fact exist, Plaintiffs submit that there are factual questions pertaining to "the legitimacy of the warrant," particularly the partiality of the judge who authorized its issuance. *Id.* at 13, 15-17.  Plaintiffs also note that Defendants' motion was filed "before . . . formal discovery has begun.  Thus, Plaintiffs are hampered in opposing this motion due to the fact that documents and testimony clearly relevant to the causes of action has [*sic*] not been obtained, and such evidence lies solely in the control of the Defendants.  Indeed, at this time there is very little 'record' to

17

point to." *Id.* at 14.  These deficiencies, according to the Plaintiffs, constitute sufficient grounds to deny the motion, or, in the alternative, to defer ruling on it.  *Id.*

### 3.   *Defendants' Reply*

As to the timeliness of the motion, Defendants submit that Judge Feuerstein granted them permission to move under Rule 12(b)(6) and Rule 12(c).  *See* Weinstock Reply Decl. ¶¶ 3-4.  With respect to Defendants' failure to file a Local Rule 56.1 statement, Defendants maintain that this failure "does not automatically warrant denial of their motion."  *Id.* ¶ 5.  Rather, Defendants rely upon the "material facts that the plaintiffs plead in their complaint, which . . . Ms. Altman declares to have personal knowledge of."  *Id.*.  However, Defendants submit that the Court should not consider the Altman Declaration.  *Id.* ¶¶ 5-6.  Defendants contend that the Complaint "boils down to no more than mere speculation and conclusory assertions" and Plaintiffs have "failed to show that relief may be granted on the grounds sought."  *Id.* ¶ 8.

Regarding interpretation of the Village Code, it is Defendants' position that "the presence of a bee hive, with swarming bees causing damage to nearby property is clearly outside that which this Code contemplates."  *Id.* ¶ 11.  Defendants then dispute Plaintiffs' and their counsel's claims that "there were no complaints that the bees had stung or harmed anyone."  *Id.*  Defendants state that "these bees posed an immediate danger to the health of those around them as well as the property of other nearby residents of the Village."  *Id.*  Defendants believe the bees imposed a threat to "both people and property in the areas surrounding the hive" because they "can fly distances up to two miles around their hive."  *Id.* ¶ 12.  Defendants state that their inspection showed that the bees were swarming the Property which warranted their actions. *Id.* ¶ 14.

18

Plaintiffs were provided ample notice to remove the beehive, according to the

Defendants. *Id.* ¶ 16. Further, Defendants maintain that Ms. Kalanthroff's complaint to the

Village about the bees, coupled with additional information by Officer Curtis, were sufficient

grounds upon which to issue the Warrant. *Id.* ¶ 17. With respect to Plaintiffs' contention that

the relationship between Ledwith and the Village Justice influenced the issuance of the Warrant,

Defendants argue that Plaintiffs' assertion "is wholly devoid of any substantive evidence of

record." *Id.*

Lastly, Defendants address Plaintiffs' claim of trespass to chattels, stating that Plaintiffs

"are aware that the bees are being kept by professional beekeepers at a local farm in Long

Island" and "counsel for both parties . . . inspected the bees." *Id.* ¶ 19. At that time, the bees

"were alive and thriving." *Id.*

## III.   STANDARD OF REVIEW

Although Defendants' motion is labeled as a motion to dismiss pursuant to Rule 12(b)(6)

for failure to state a claim, Defendants seek alternate relief pursuant to Rule 12(c) for judgment

on the pleadings or conversion of their motion to one for summary judgment. Defs.' Mem. at 7.

"Generally, if a defendant wishes to interpose a 12(b) motion, he must do so before filing an

answer." *Zebrowski v. Denckla*, 630 F. Supp. 1307, 1308 n.1 (E.D.N.Y. 1986). Defendants in

this action had already filed answers by the time they brought their motion to dismiss. "A

motion to dismiss for failure to state a claim . . . that is styled as arising under Rule 12(b) but is

filed after the close of pleadings[ ] should be construed by the district court as a motion for

judgment on the pleadings under Rule 12(c)." *Patel v. Contemporary Classics of Beverly

Hills*, 259 F.3d 123, 126 (2d Cir. 2001). Under Rule 12(c), "a party is entitled to judgment on

the pleadings only if it has established that no material issue of fact remains to be resolved and

that [it] is entitled to judgment as a matter of law." *Bailey v. Pataki,* No. 08-CV-8563, 2010 WL 234995, at *1 (S.D.N.Y. Jan. 19, 2010) (quotation marks and citations omitted) (alteration in original).  In light of Defendants' answers [DE 9; DE 10; DE 15] and amended answer [DE 16], the Court will construe the pending motion as one for judgment on the pleadings pursuant to Rule 12(c).  *See Patel*, 259 F.3d at 126.  As "[t]he standard for granting a Rule 12(c) motion . . . is identical to that of a Rule 12(b)(6) motion," the Court will apply the Rule 12(b)(6) standard to Defendants' motion.  *Id.*

Under Rule 12(b)(6), a case should be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Gould v. Lightstone Value Plus Real Estate Inv. Trust, Inc.*, 301 Fed. Appx. 97, 99 (2d Cir. 2008) (citation omitted).  The Court must liberally construe the claims set forth in the Complaint, accept all factual allegations in the Complaint as true, and draw all reasonable inferences in favor of the Plaintiff.  *See Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P.*, 737 F.3d 166, 176 (2d Cir. 2013); *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013).  The Court does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see Operating Local 649 Annuity Tr. Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (holding that a complaint must set forth "a plausible set of facts sufficient 'to raise a right to relief above the speculative level'") (quoting *Twombly*, 550 U.S. at 555).

When determining the sufficiency of Plaintiffs' claims for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in the Complaint which are accepted as true, to documents attached to the Complaint as exhibits or incorporated in the Complaint by reference, to matters of which judicial notice may be taken, and to documents whose terms and effect are

relied upon heavily in the complaint and, thus, are rendered "integral" to the Complaint.

*See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *Leavens v. Nat'l Credit Sys., Inc.*, 17-CV-7354, 2019 WL 1507785, at *2 (E.D.N.Y. Mar. 29, 2019) (quoting *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011)).   To the extent "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56" and "all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."[3]  FED. R. CIV. P. 12(d); *see, e.g.*, *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991); *Wrap-N-Pack, Inc. v. Eisenberg*, No. 04-CV-4887, 2007 WL 952069, at *5 (E.D.N.Y. Mar. 29, 2007).

"The essential inquiry in determining whether it is appropriate to convert a motion [to dismiss] into a motion for summary judgment is whether the non-movant should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings." *Ferguson v. Jones*, 10-CV-817, 2011 WL 4344434, at *2 (S.D.N.Y. Sept. 12, 2011) (alteration in original) (citing *Costor v. Sanders*, No. 07-CV-11311, 2009 WL 1834374, at *2 (S.D.N.Y. June 16, 2009)); *see also Hernández v. Coffey*, 582 F.3d 303, 307 (2d Cir. 2009) ("Ordinarily, formal notice is not required where a party should reasonably have recognized the possibility that the motion might be converted into one for summary judgment and was neither

---

[3]      "The standards under Rules 12(b)(6) and Rule 12(c) concerning the court's consideration of matters outside the pleadings and conversion to summary judgment are essentially the same."  *See Martin v. Performance Trans. Inc.*, No. 17-CV-6471L, 2019 WL 95803, at *1 (W.D.N.Y. Jan. 3, 2019) (citing *Arroyo v. City of Buffalo*, No. 15-CV-753, 2017 WL 3085835, at *3 (W.D.N.Y. July 20, 2017)).

taken by surprise nor deprived of a reasonable opportunity to meet facts outside the pleadings.")
(quotations, brackets and citations omitted).  Where the movant has clearly stated that he moves
in the alternative for summary judgment and where the non-movant responds to the motion by
filing his own affidavit and specifically addressing the summary judgment argument in his
memorandum of law in opposition, the non-movant has sufficient notice that the court might
treat the motion as one for summary judgment.  *See, e.g., Robert v. Dep't of Justice,* No. 99-CV-
3649, 2001 WL 34077473, at *1 n.2 (E.D.N.Y. March 22, 2001) (citing *Groden v. Random
House, Inc.,* 61 F.3d 1045, 1053 (2d Cir. 1995);  *Gurary v. Winehouse,* 190 F.3d 37, 43 (2d Cir.
1999); *G. & A. Books, Inc. v. Stern,* 770 F.2d 288, 295 (2d Cir. 1985)).

The Court must now determine whether Defendants' motion for judgment on the
pleadings should be converted to one for summary judgment under Rule 56.  *See* FED. R. CIV. P.
12(d).  Defendants notified Plaintiffs that their motion was for summary judgment as an
alternative to dismissal and Plaintiffs specifically argued against granting summary judgment in
their opposition.  As such, the Court finds that formal notice of conversion would not be required
because both parties "should reasonably have recognized the possibility that the motion might be
converted into one for summary judgment."  *Hernandez*, 582 F.3d  at 307 (quotations and
citation omitted); *Nat'l Ass'n of Pharm. Mfrs., Inc. v. Ayerst Labs., Div. of/& Am. Home Prod.
Corp.*, 850 F.2d 904, 911 (2d Cir. 1988) (finding non-movant was on notice when, among other
things, motion was styled as "motion to dismiss *or, in the alternative, for summary judgment* ")
(emphasis in original); *Glover v. Greenman*, No. 11-CV-9122, 2013 WL 1294698, at *4
(S.D.N.Y. Apr. 1, 2013) (When plaintiff's "submissions explicitly refer to Defendants' motion
for summary judgment … [i]t is thus fair to infer that [the parties] had not only constructive, but

22

actual, notice of the possibility that the Court would treat defendants' motion as one for summary judgment.").

Notwithstanding some of these conversion principles, under the circumstances here, the Court does not recommend exercising its discretion to convert Defendants' Rule 12(c) motion to one for summary judgment. It is well established that "[f]ederal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings offered in conjunction with a Rule 12(b)(6) motion, and thus complete discretion in determining whether to convert the motion to one for summary judgment." *Carione v. United States*, 368 F. Supp. 2d 186, 191 (E.D.N.Y. 2005) (internal quotation omitted); *see also Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 573 (2d Cir. 2005) ("It is within the discretion of this Court to convert a motion filed under Fed. R. Civ. P. 12 (b)(6) into one seeking summary judgment when matters outside the pleadings have been presented and accepted by the Court, and where all parties have been given a reasonable opportunity to present materials pertinent to the motion's disposition.") (internal quotation marks omitted). "This discretion generally will be exercised on the basis of the district court's determination of whether or not the proffered material, and the resulting conversion from Rule 12(b)(6) to the Rule 56 procedure, is likely to facilitate the disposition of the action." *Stephens v. Bayview Nursing & Rehab. Ctr.*, No. 07-CV-0596, 2008 WL 728896, at *4 (E.D.N.Y. Mar. 17, 2008) (quoting *Carione*, 368 F. Supp. 2d at 191). In conducting this inquiry, courts "look[ ] to the substance of the motion," as "[t]he element that triggers the conversion . . . is a challenge to the sufficiency of the pleader's claim supported by extra-pleading material."). *Vested Bus. Brokers, Ltd. v. Cty. of Suffolk*, No. 16-CV-4945, 2017 WL 4122616, at *3 (E.D.N.Y. Sept. 15, 2017) (quoting *Ansonia Tenants'*

23

*Coalition, Inc. v. Ansonia Assocs.*, 163 F.R.D. 468, 470 (S.D.N.Y. 1995) and *Nat'l Cement Co. v. Mead Corp.*, 80 F.R.D. 703, 704-05 (S.D.N.Y. 1978)), *aff'd,* 741 Fed. App'x 39 (2d Cir. 2018).

Having reviewed the parties' submissions, the Court does not find that converting Defendants' motion to one for summary judgment would facilitate the disposition of this case. Defendants' argument boils down to three points: (1) the bees were not merely "present" on the Property but posed a threat to neighbors and their properties; (2) Plaintiffs received sufficient "notice" of the Village's intention to seek a warrant; and (3) the issuance of the Warrant was proper and supported by sufficient documentation. *See generally* Defs' Mem.; Weinstock Reply Decl. However, the supporting documentation Defendants submitted – the Weinstock Declaration, discovery demands they served upon Plaintiffs, and transcripts of both Plaintiffs' § 50-h hearings – do not substantiate any of these facts, all of which Plaintiffs dispute. Moreover, Defendants' motion does not rely upon any of these documents and their counsel even stated that the "material facts that plaintiffs plead in their complaint" are the basis for their summary judgment motion. Weinstock Reply Decl. ¶ 5. Because Defendants are relying upon the factual allegations in the Complaint, and not extrinsic evidence, such reliance cuts against converting their motion to summary judgment.

In addition, whereas here, formal discovery has not yet begun, "[t]here would be little point in considering a summary judgment motion when significant relevant facts may yet be discovered." *Stephens*, 2008 WL 728896, at *3 (E.D.N.Y. Mar. 17, 2008)[4] (quoting *Wajilam*

---

[4]     This Court recently addressed this same issue in a case involving the same counsel, Gregg D. Weinstock, Esq., who represents the Defendants here. In *Allen v. Leonard, et al.*, CV 18-7163, also before Judge Feuerstein, this Court pointed out that

> [t]he Court does not favor a party's efforts to intentionally cause the conversion of a motion to dismiss to one for summary judgment to secure the benefit of an adjudication on the merits while

*Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd.*, 475 F.Supp.2d 275, 278 (S.D.N.Y.2006));

*see also Kaplan, Inc. v. Yun*, 16 F. Supp. 3d 341, 345 (S.D.N.Y. 2014) ("However, because the

parties have not engaged in discovery and the plaintiffs have not had the opportunity to gather

and present evidence and argument in opposition to a summary judgment motion, the Court

declines to convert the motion into one for summary judgment." (citing *Fargas v. Cincinnati*

*Mach., LLC*, 986 F.Supp.2d 420, 421, No. 13 Civ. 4443, 2013 WL 6508863, at *1 (S.D.N.Y.

Dec. 12, 2013)); *Stephens*, 2008 WL 728896, at *4 ("Here, in its broad discretion, and under the

circumstances of this case, the Court finds that conversion to summary judgment is inappropriate

and that further discovery in this case is necessary at this juncture.").

Accordingly, the Court respectfully recommends to Judge Feuerstein that Defendants'

motion ***not*** be converted to one for summary judgment.    Consequently, the Court declines to

consider any extrinsic documents submitted in support of Defendants' Rule 12(c) motion as well

as any factual assertions in their papers which are not alleged in the Complaint.    *See Blair v. L.I.*

*Child & Family Dev. Servs., Inc.*, No. 16-CV-1591, 2017 WL 722112, at *8 E.D.N.Y. Jan. 31,

2017) (declining to consider extra-pleading materials and facts in motions papers not alleged in

the complaint on a motion to dismiss after declining to convert the motion to one for summary

judgment), *report and recommendation adopted*, 2017 WL 728231 (E.D.N.Y. Feb. 21, 2017);

---

circumventing the procedures required for such a motion.    If
Defendants believe they are entitled to judgment as a matter of law
based on material facts for which there are no genuine disputes, then
they may properly make such a motion after discovery and after
complying with Local Rule 56.1 -- and then can assert *all* materials
facts *actually* supported by the materials in the record. *See* Fed. R.
Civ. P. 56; Local Rule 56.1.

CV 18-7163, Report and Recommendation [DE 23 at 14, n.5].

*see also Vested Bus. Brokers, Ltd. v. Cty. of Suffolk*, No. 16-CV-4945, 2017 WL 4122616, at *3 (E.D.N.Y. Sept. 15, 2017), *aff'd*, 741 Fed. App'x 39 (2d Cir. 2018) ("The Court declines to convert defendants' motion to dismiss to a motion for summary judgment. Accordingly, the [Court] ignores the [ ] Affidavits, as well as facts in the County Defendants' motion papers and Plaintiff's Opposition Papers not set forth in the Complaint, in determining this motion.").

## IV.   DISCUSSION

Each of Plaintiffs' claims -- a combination of constitutional and common law claims -- are largely based upon the validity of the Warrant issued on June 22, 2017.  However, in their motion, Defendants gloss over Plaintiffs' individual causes of action and only challenge one of Plaintiffs' claims, namely, the procedural due process claim.  *See generally* Defs.' Mem.  For this reason, the Court will focus its inquiry on the procedural due process claim and not consider at this time dismissal of Plaintiffs' claims for deprivation of substantive due process, unconstitutional search and seizure, violation of privacy rights, uncompensated taking, trespass, and conversion.

### A.    Section 1983

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proceeding for redress.

42 U.S.C. §1983.  Section 1983 does not create any independent substantive rights but rather is a vehicle to "redress . . . the deprivation of [federal] rights established elsewhere." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816, 105 S.Ct. 2427, 85, 27 L.Ed.2d 791 (1985), *abrogated on other grounds recognized by*

*Collins v. City of San Diego*, 841 F.2d 337 (9th Cir. 1988)); *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). For a plaintiff to prevail on a § 1983 claim, they must demonstrate: "(1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state law." *Hawkins v. Nassau Cty. Corr. Facility*, 781 F.Supp.2d 107, 111 (E.D.N.Y. 2011) (citing 42 U.S.C. §1983). Here, the parties do not dispute that any Defendants involved in the events giving rise to Plaintiffs' claims were acting under color of state law. As such, the Court need only address the first element of a § 1983 claim—whether Defendants violated Plaintiffs' constitutional rights.

**B.     Procedural Due Process**

Although Plaintiffs allege their procedural due process claim is based upon the Fifth Amendment, *see* Compl. ¶ 97, it is the Fourteenth Amendment's due process clause which instead applies to this claim because there are no federal officials involved in this matter. *See Maxineau v. City of New York*, No. 11-CV-02657, 2013 WL 3093912, at *5 (E.D.N.Y. June 18, 2013). Consequently, in the absence of federal involvement, Plaintiffs have asserted no cognizable wrong under the Fifth Amendment's due process clause because all of their allegations are directed at officials operating with state authority. A procedural due process claim under the Fourteenth Amendment for § 1983 purposes is comprised of two elements: "(1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." *Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012). However, neither the Complaint nor Defendants' motion papers are particularly enlightening as to whether Plaintiffs' claim for procedural due process is legally sufficient.

Plaintiffs' counsel has employed a "kitchen-sink" approach to the drafting of the Complaint, especially the procedural due process cause of action, which has rendered the claim

difficult to discern.  Nevertheless, the Court distills the following allegations from the Complaint as to this count:  (1) Defendants did not comply with Village Code § 59-2 because they failed to provide Plaintiffs notice of their intent to seek an administrative search warrant and did not make a "demand to inspect," Compl. ¶¶ 82-83; (2) the Daly Affidavit, the Ledwith Affirmation, and the Warrant application (a) did not provide "reasonable cause" to the Village Justice to presume that Plaintiffs' bees violated Village Code § 185, (b) did not set forth the public interest in obtaining the Warrant, and (c) did not show any immediate danger or harm to the general public, *id.* ¶¶ 83-84, 86; (3) Village Code § 59-4 only authorizes inspection, photographing, copying, or recording the condition of the Property and not removal of the bees, *id.* ¶ 84; (4) Daly, Taylor, and Blohm lacked reasonable cause or probable cause to enter the Property or seize the bees and beehive, *id.* ¶ 85; and (5) Plaintiffs were not provided a pre- or post-deprivation hearing with regard to the alleged violation of Village Code § 185, *id.* ¶ 84.

On the other hand, Defendants' motion is not a beacon of clarity either.  Defendants argue that Plaintiffs' allegations fail to state a claim because "the circumstances surrounding this matter did not require an administrative inspection, [but] rather an inspection required for the good and welfare of the community" because the "bees and the beehive constituted an infestation . . . [,] presented a danger to the children on neighboring property and . . . caused damage[] to a structure on the neighbor's property."  Defs.' Mem at 14.  Defendants summarize Plaintiffs' allegations concerning procedural due process as revolving around a lack of notice under Village Code § 59-2 of Defendants' intent to obtain a warrant.  They dispute such allegations by stating there was "repeated and consistent contact between the Village and the [Plaintiffs]," which the Complaint details.  *Id.* at 14-15.  According to Defendants, Plaintiffs did not permit them to enter the Property and view the infestation and Plaintiffs did not remove the

bees and beehive despite having the opportunity to do so.  *Id.* at 15-17.  Further, Defendants submit that the Warrant was issued in reliance upon the danger posed by the beehive and swarming bees based upon Ms. Kalanthroff's complaints and Building Inspector Daly's observations.  *Id.* at 15-18.

It does not appear to the Court that the parties are disputing whether Plaintiffs possessed a liberty or property interest of which they were deprived.  Rather, the difference of opinion is whether sufficient procedural protections were provided before and after Plaintiffs' honeybees and beehive were seized from the Property pursuant to the Warrant.  To the extent that this claim pertains to the sufficiency of the information relied upon to obtain the Warrant and the Warrant's scope, *i.e.*, whether there was an "infestation" to justify a Village Code violation, *id.* ¶ 80, whether the Daly Affidavit and Ledwith Affirmation provided "reasonable cause" for the issuance of the Warrant, *id.* ¶ 83, and whether the scope of the Warrant was proper, *id.* ¶ 84, these allegations are not relevant to this claim and instead pertain to Plaintiffs' claim under the Fourth Amendment for unconstitutional search and seizure, which Defendants have not challenged on this motion.  Notwithstanding this posture, in viewing the Complaint in a light most favorable to Plaintiffs, the Court construes two possible bases for Plaintiffs' procedural due process claim: (1) Defendants' failure to provide "notice" as per Village Code § 59-2; and (2) Defendants' failure to provide a pre- or post-deprivation hearing.  *See* Compl.  ¶¶ 82, 84.[5]

---

[5]     In their motion papers, the parties dispute the constitutionality of Village Code § 185, and, in particular, the constitutionality of that section's definition of "infestation."  Defs.' Mem. at 7-11; Pls.' Opp'n at 5-6.  The Complaint does not appear to ask the Court for a declaratory judgment as to the constitutionality of this provision, but rather, alleges that Defendants incorrectly interpreted "infestation" and seeks a declaration that beekeeping is not prohibited under the Village Code.  *See* Compl. at ¶¶ 38, 80 and p.38. *But see id.* at 37-38 (seeking declaratory judgment that Village Code § 59 pertaining to administrative search warrants is unconstitutional).  It is not until their opposition papers that Plaintiffs clearly ask the Court to declare Village Code § 185 unconstitutional for "vagueness with regard to its

As to the Court's first perceived basis for Plaintiffs' procedural due process claim, Village Code § 59-2 states:

> In cases where a local law does not specifically provide for an administrative inspection, but, where such inspection is required for the good and welfare of the community, and, where an owner or occupant fails to or denies entry upon the premises for the purpose of such administrative inspection by an authorized Village official, the Village may apply to the court for an administrative search warrant, provided a written notice is served by certified mail, return receipt requested to the last known address of the owner of the premises or to the occupant of the premises that an administrative search warrant may or will be requested of the court.

Defs.' Mem. at 13.  Village Code § 59-2 goes on to state what the contents of that notice must set forth.  *See id.*  The Complaint alleges that "[n]o notice of [Defendants'] intent to seek an administrative search warrant was made to the Homeowners" pursuant to this provision.  Compl. ¶ 82.  However, it is well-settled law that "violations of state law procedural requirements do not alone constitute deprivation of due process since 'federal constitutional standards rather than state law define the requirements of procedural due process.'"  *Rivera v. Wohlrab*, 232 F. Supp. 2d 117, 123 (S.D.N.Y. 2002) (quoting *Russell v. Coughlin*, 910 F.2d 75, 78 n.1 (2d Cir. 1990));

---

application to the keeping of bees."  Pls.' Opp'n at 5.  "[I]t is well settled that '[p]laintiffs cannot amend their complaint by asserting new facts or theories for the first time in opposition to [d]efendants' motion to dismiss.'"  *Hurley v. Town of Southampton*, No. CV 17-5543, 2018 WL 3941944, at *18 (E.D.N.Y. Aug. 13, 2018) (quoting *K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 209 (S.D.N.Y. 2013)); *see Williams v. Black Entm't Television, Inc.*, No. 13-CV-1459, 2014 WL 585419, at *11 (E.D.N.Y. Feb. 14, 2014) ("Plaintiff cannot amend his pleadings through an opposition brief."); *Fadem v. Ford Motor Co.,* 352 F. Supp. 2d 501, 516 (S.D.N.Y. 2005) ("It is longstanding precedent in this circuit that parties cannot amend their pleadings through issues raised solely in their briefs.").  The Court therefore declines to address the claims Plaintiffs raise for the first time in their opposition as to the constitutionality of Village Code § 185.  This is the reason why the Court did not consider the constitutionality of this provision as a possible basis for a procedural due process violation for purposes of this motion.  *See Hurley*, 2018 WL 3941944, at *18.

*see Zahra v. Town of Southold*, 48 F.3d 674, 682 (2d Cir. 1995) ("Our precedents have firmly established that the mere violation of a state law does not automatically give rise to violation of federal constitutional rights . . . ." (citing *Yale Auto Parts, Inc. v. Johnson*, 758 F. 2d 54, 58-59 (2d Cir. 1985))).  "These infractions may give rise to state law claims, but do not, by themselves, constitute due process violations of a constitutional nature. Thus, a § 1983 claim brought in federal court is not the appropriate forum to urge violations of . . . state law[.]" *Id.* "[T]o prevail on a § 1983 claim, the allegations asserted must constitute violations of constitutional due process standards." *Id.* (citing *Hyman v. Holder*, No. 96 Civ. 7748, 2001 WL 262665, at *6 (S.D.N.Y. Mar. 15, 2001)).  In light of this standard, even if Defendants did not provide Plaintiffs notice of their intent to seek the Warrant, regardless of whether this conduct violated Village Code § 59-2,  the fact that an administrative search warrant issued without prior notice in and of itself does not give rise to a constitutional claim.  *1120 Cent. Condominiums Owners Ass'n v. City of Seal Beach*, No. 94-55435, 1995 WL 370330, at *2 (9th Cir. 1995) ("Neither the ex parte nature of the warrant proceeding nor any purported lack of actual notice rendered the search unconstitutional."), *cert. denied*, 516 U.S. 1047 (1996); *see City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2456 (2015) ("[N]othing in our decision today precludes an officer from conducting a surprise inspection by obtaining an *ex parte* warrant . . . ."); *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 315-24 (1978) (affirming right of a federal administrative agency to obtain an *ex parte* warrant).

The Court next turns to whether Defendants' alleged failure to provide a pre- or post-deprivation hearing gives rise to a procedural due process claim.  *See* Compl. ¶ 88.  "When reviewing alleged procedural due process violations, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random,

31

unauthorized acts by state employees." *Laface v. Eastern Suffolk BOCES*, 349 F. Supp. 3d 126, 160-61 (E.D.N.Y. 2018) (citing *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 881 (2d Cir. 1996)). "When the deprivation occurs in the more structured environment of established state procedures, rather than random acts, the availability of postdeprivation procedures will not, ipso facto, satisfy due process." *Hellenic*, 101 F.3d at 880 (citing *Hudson v. Palmer*, 468 U.S. 517, 532 (1984)). Under these circumstances, a plaintiff may be entitled to some form of pre-deprivation process as well. *See Viteritti v. Incorporated Village of Bayville*, 918 F. Supp. 2d 126, 134 (E.D.N.Y. 2013) (citing *Chase Grp. Alliance LLC v. City of N.Y. Dep't of Fin.*, 620 F.3d 146, 152 n.3 (2d Cir. 2010)). On the other hand, when the deprivation occurs by virtue of a random act committed by a state employee, "the due process required by the fourteenth amendment is satisfied by the availability at the state level of an adequate post-deprivation hearing." *Laface*, 349 F. Supp. 3d at 160 (quoting *Kraebel v. New York City Dep't of Hous. Pres. & Dev.*, 959 F.2d 395, 404 (2d Cir. 1992) (internal quotation marks omitted)). In New York State, "an Article 78 proceeding is a perfectly adequate postdeprivation remedy" where "constitutional issues can be decided." *Hellenic*, 1010 F.3d at 881.

"The distinction between random and unauthorized conduct and established state procedures . . . is not clear-cut." *Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006). However, an action is not considered to be random and unauthorized where a state "delegate[s] to [the defendants] the power and authority to effect the very deprivation complained of[,] and also delegate[s] to them the concomitant duty to initiate the procedural safeguards set up by state law to guard against unlawful [deprivation]." *Morizio v. Town of Oyster Bay*, No. CV 14-1241, 2015 WL 13721649, at *4 (E.D.N.Y. Apr. 24, 2015) (alteration in

original) (quoting *DiBlasio v. Novello*, 344 F.3d 292, 303 (2d Cir. 2003)).  "Generally, a deprivation will not be considered 'random and unauthorized' where the allegations 'suggest that any violation . . . was [made] pursuant to a statute, code, regulation, or custom, or made by a final decisionmaker.'"  *Id.* (quoting *Chase Grp.*, 620 F.3d at 152 n.3).

Here, Plaintiffs allege that both the Board of Trustees and Village Attorney Ledwith are the final decision-making authorities for purposes of obtaining an administrative search warrant. Compl. ¶ 81.  Plaintiffs allege that Ledwith was the individual who sought the Warrant which provided for the removal of the bees and beehive and that he was delegated that authority by the Board of Trustees.  *Id.*  The removal of the bees and beehive was then carried out by Building Inspector Daly, Police Officer Taylor and Walter Blohm who was hired to remove the hive.  *Id.* ¶ 74.  Although the Complaint states that Defendants did not provide Plaintiffs with any pre- or post-deprivation process, the Complaint does not address on what basis, if any, Plaintiffs believe they are entitled to such process.  *See id.* ¶ 84.  The Complaint simply alleges that Village Code § 59-2 does not provide for a pre- or post-deprivation hearing.  *See id.*  Defendants do not respond to Plaintiffs, allegations regarding the lack of these hearings in their motion, but in the Amended Answer, Defendants "deny each and every allegation contained within paragraph . . . 84," which, as mentioned above, states that Defendants did not provide pre- or post-deprivation hearings.  Am. Answer ¶ 4; *see* Compl. ¶ 84.  Whether or not that allegation is accurate, the Complaint arguably alleges that a deprivation occurred through the acts of Village officials, particularly the Village Attorney, who had the final decision-making authority to obtain the Warrant which provided for the removal of the bees and beehive – acts which ultimately served as the basis for the entire Complaint.

33

Defendants argue that, as alleged in the Complaint, Plaintiffs were given notice that the bees and beehive were in violation of the Village Code and that Plaintiffs were advised of the date these items would be removed from the Property if the code violation was not cured. Defs' Mem. at 15. Even if Plaintiffs were given notice, as a general principle, they were still entitled to "some kind of hearing" prior to being deprived of a property interest. *See Morizio*, 2015 WL 13721649, at *3 (quoting *Rivera-Powell*, 470 F.3d at 465); *see also Ferreira v. Town of East Hempstead*, 56 F. Supp. 3d 211, 226 (E.D.N.Y. 2014) ("[W]here a plaintiff alleges a deprivation pursuant to an established state procedure, as is the case here, the state must ordinarily provide a pre-deprivation hearing."). However, "[t]he existence of an emergency may . . . excuse the need to provide a predeprivation hearing." *Ferreira*, 56 F. Supp. 3d at 227 (citing *Catanzaro v. Weiden*, 188 F.3d 56, 63-64 (2d Cir. 1999)). "Absent such evidence, . . . the failure to afford a pre-deprivation hearing would constitute a violation of the constitutional right to procedural due process in this case." *Ferreira*, 56 F. Supp. 3d at 228 (citing *Burtnieks v. City of New York*, 716 F.2d 982, 987-89 (2d Cir. 1983)). To that point, Defendants argue that a danger was caused by the beehive and swarming bees. However, this factual assertion made by counsel is unsupported by affidavit or declaration and cannot be considered by the Court in resolving this motion. *See* Local Civ. R. 7.1 ("All motions shall include … supporting affidavits and exhibits thereto containing any factual information and portions of the record necessary for the decision of the motion."). The Complaint alleges that there "is absolutely no showing of any immediacy of danger or harm to the general public." Compl. ¶ 86. Therefore, whether exigent circumstances existed to justify Defendants' failure to provide a pre-deprivation hearing is a matter that needs to be developed by the parties through discovery. Moreover, although Plaintiffs did not allege that they utilized an Article 78 proceeding as a post-deprivation remedy, that issue is of no

moment because the Complaint demonstrates that Defendants did not afford Plaintiffs the pre-deprivation hearing to which they were entitled.

Further, Plaintiffs seek to hold the Village and the Board of Trustees liable for the conduct of the individual defendants giving rise to this alleged due process deprivation and for failing to adequately train, supervise, or control them. *See* Compl. ¶¶ 90, 93. In order to bring a § 1983 claim against a municipal defendant, "a plaintiff must establish both a violation of his constitutional rights and that the violation was motivated by a municipal custom or policy." *Clancy v. Town of Southold*, No. 2:15-cv-7321, 2018 WL 4185706, at *4 (E.D.N.Y. Aug. 31, 2018) (citing *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978)). "A municipality may not be held liable under [§] 1983 on a *respondeat superior* theory of liability." *Camac v. Long Beach City Sch. Dist.*, No. 09 CV 5309, 2011 WL 3030345, at *17 (E.D.N.Y. July 22, 2011). A plaintiff "need not identify an express rule or regulation," but rather, "the existence of a municipal policy or custom" can be pled in four ways. *Id.* A plaintiff may allege: "(1) the existence of a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of policymaking officials; or (4) a failure by policy makers to properly train or supervise their subordinates, amounting to deliberate indifference to the rights of those who come in contact with municipal employees." *Clancy*, 2018 WL 4185706, at *4 (quoting *Calicchio v. Sachem Central Sch. Dist.*, 2015 WL 5944269, at *10 (E.D.N.Y. Oct. 13, 2015)). "The Supreme Court has long recognized that '[i]f the decision to adopt [a] particular course of action is properly made by [a] government's authorized decisionmakers, it surely represents an act of official

government 'policy' as that term is commonly understood.'" *Id.* (alterations in original) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)).  Here, Defendants have not advanced any argument against the imposition of *Monell* liability against the Village or the Board of Trustees in their motion.[6]  However, as stated above, Plaintiffs alleged facts that demonstrate Village Attorney Ledwith had final decision-making authority with respect to the Warrant. Consequently, the Court finds that this aspect of Plaintiffs' claim should proceed as well because there may be a potential basis for municipal liability here.  *Pleener v. N.Y. City Bd. of Educ.*, No. 05 CV 973, 2007 WL 2907343, at *17 (E.D.N.Y. Oct. 2007) ("[A]ctions by an individual with final decision-making authority in a municipality may constitute official policy for purposes of a § 1983 claim." (citing *Pembaur*, 475 U.S. at 483-84)).

Accordingly, the Court respectfully recommends to Judge Feuerstein that Defendants' motion to dismiss Plaintiffs' procedural due process claim under the U.S. Constitution be denied.[7]

---

[6]   "Although no cases conclusively hold that a board of directors of a village is not a suable entity or is redundant when the village is also a named defendant," the Court declines to dismiss the Board of Trustees because Defendants have not raised this issue and discovery can develop whether the Board is a separate legal entity from the Village.  *MHANY Mgmt. Inc. v. Inc. Vill. of Garden City*, 985 F. Supp. 2d 390, 407 (E.D.N.Y. 2013), *aff'd sub nom. Mhany Mgmt., Inc. v. Cty. of Nassau*, 819 F.3d 581 (2d Cir. 2016); *Glacken v. Inc. Vill. of Freeport*, No. CV 09-4832, 2011 WL 7546425, at *2 (E.D.N.Y. June 27, 2011), *report and recommendation adopted*, 2012 WL 895392 (E.D.N.Y. Mar. 15, 2012).

[7]   The Court is not addressing Plaintiffs' procedural due process claim under the New York State constitution because it is sought as alternative relief to the § 1983 claim.  *See* Compl. at 38.

V.    CONCLUSION

For the foregoing reasons, the Court respectfully recommends to Judge Feuerstein that

Defendant's motion to dismiss be DENIED in accordance with this Report and

Recommendation.

VI.    OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure,

the parties shall have fourteen (14) days from service of this Report and Recommendation to file

written objections.  *See* FED. R. CIV. P. 6(a), (e).  Such objections by an attorney of record shall

be filed with the Clerk of the Court via ECF.  **A courtesy copy of any objections filed is to be**

**sent to the Chambers of the Honorable Sandra J. Feuerstein.  Any requests for an**

**extension of time for filing objections must be directed to Judge Feuerstein prior to the**

**expiration of the fourteen (14) day period for filing objections**.  Failure to file objections will

result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155

(1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997);

*Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).


**SO ORDERED:**


Dated:  Central Islip, New York
        March 31, 2020


                                    /s/ A. Kathleen Tomlinson
                                    A. KATHLEEN TOMLINSON
                                    United States Magistrate Judge