UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------------X
DARYL ALTMAN and ROBERT SHEPARD,

Plaintiffs,

**REPORT AND RECOMMENDATION**

v.

18-CV-04984 (JMA) (LGD)

THE INCORPORATED VILLAGE OF LYNBROOK; ALAN C. BEACH; HILARY H. BECKER; MICHAEL HAWXHURST, and ANN MARIE REARDON, *each individually and who serve collectively as the* BOARD OF TRUSTEES OF THE INCORPORATED VILLAGE OF LYNBROOK; *Lynbrook Village Attorney* PETER K. LEDWITH, *individually*; *Lynbrook Village Building Department Supervisor* BRIAN STANTON, *individually*; *Lynbrook Village Building Inspector* TERRANCE DALY, *individually*; *Lynbrook Village Building Inspector* (Name Unknown) CURTIS, *individually*; *Lynbrook Village Code Enforcement Official* (Name Unknown) TAYLOR, *individually*; WALTER BLOHM; and JOHN DOE Numbers "1" through "5", *said individuals being not yet having been ascertained*,

Defendants.
---------------------------------------------------------------------------X

**LEE G. DUNST**, Magistrate Judge:

Presently before the Court in this action by Plaintiffs Daryl Altman and Robert Shepard ("Plaintiffs") is Plaintiffs' Motion for Recovery of Attorney's Fees and Costs, at Electronic Case File Number ("ECF No.") 58. Plaintiffs seek an award of $89,400.00 in attorney's fees and $12,448.34 in costs, which Defendants oppose in part. ECF Nos. 58-64. On June 9, 2022, the Honorable Joan M. Azrack referred the motion to the undersigned Magistrate Judge. (June 9, 2022 ECF Order). For the reasons set forth below, this Court respectfully recommends that the motion be granted in part to award Plaintiffs attorney's fees of $87,380.00 and costs of $12,311.05.

# I. BACKGROUND

## A. Relevant Facts

Most of the facts in this case are not in dispute. ECF No. 61, ¶ 6.[1] According to Plaintiffs, this action arose as a result of the Village of Lynbrook's (the "Village") search of Plaintiffs' residential property at 44 Rowe Avenue in Lynbrook and the seizure of an active beehive. ECF No. 58, ¶ 3. Plaintiffs allege *inter alia* that the search and seizure was based on an *ex parte* administrative search warrant that contravened the Village's code and denied Plaintiffs the opportunity to be heard prior to the search and seizure. *Id.*

In 2015, Plaintiffs decided to raise honeybees at their Lynbrook home. ECF No. 58, Ex. 1, ¶ 2. Plaintiffs affirm they attempted to contact the Village in advance regarding any rules or regulations that would govern raising bees, but the Village did not respond to their inquiries. *Id.* Having received no response, Plaintiffs began raising bees in their backyard in 2016. *Id.*

According to Plaintiffs, in June 2017, the Village informed Defendants that Plaintiffs' beehive was not authorized under the Village code and was an unlawful "infestation" of insects that must be removed. *Id.* Soon thereafter, Plaintiffs contacted their current counsel, J. Lee Snead. ECF No. 58, Ex. 1, ¶¶ 3-4. In turn, Mr. Snead attempted to contact the Village on multiple occasions to discuss this matter. *Id.* ¶ 4.

On June 26, 2017, while Plaintiffs were at work, the Village seized the beehive from Plaintiffs' property. *Id.*

Following this seizure, Plaintiffs engaged Mr. Snead to begin the process for suing the Village. In August 2017, Mr. Snead served the Village with a Notice of Claim and an Intention to File Action under New York General Municipal Law § 50-h. ECF No. 58, ¶ 6. Pursuant to

---

[1] Defendants defer to "most facts" outlined by Plaintiffs in the interest of judicial economy. ECF 61, ¶ 6.

this statute, Plaintiffs were deposed on October 16, 2017. *Id.* The parties discussed a possible settlement around this time but were unsuccessful. *Id.*

The case proceeded forward over the next two and a half years. *Id.* ¶ 7. On April 30, 2018, Plaintiffs signed a retainer agreement for Mr. Snead's legal services (including "[d]rafting, filing and other litigation aspects of a lawsuit in federal court to address the unconstitutional and civil rights aspect of the Village's seizure of [the] beehive;" "[n]egotiations in regard to the case;" and "[s]uch other matters as [Plaintiffs] may directed [Mr. Snead] to perform") at a rate of $400.00 per hour plus disbursements. ECF No. 58, Ex. 2, p. 1. The agreement required a retainer deposit of $15,000. *Id.* Additionally, the retainer agreement stated, "[t]his case will proceed under the federal civil rights law (42 U.S.C. § 1983), which authorizes the payment of attorneys [sic] fees should you be substantially successful in this action. In that event, I will be making a fee award for my attorney's fees and time incurred on your behalf, out of which – if awarded – the attorney's fees you paid me will be reimbursed to you." *Id.* at p. 2.

On September 4, 2018, Plaintiffs filed the Verified Complaint in this matter, alleging that "by custom and specific action, [Defendants] had unconstitutionally and unlawfully deprived Plaintiffs of their right to be free from unreasonable search and seizure, for the taking of property without due process or lawful compensation, and for the denial of due process surrounding the unlawful obtaining and action in executing an administrative search warrant at Plaintiffs' residence. . . . Plaintiffs sought damages and declaratory and injunctive relief pursuant to the provisions of 42 U.S.C., § 1983, as well as related New York causes of action." ECF No. 58, ¶ 9. Defendants answered and then filed an Amended Answer. *See* ECF Nos. 9, 10, 15, & 16.

From November 2018 through May 2019, the parties engaged in discovery. ECF No. 58, ¶ 11. Subsequently, Defendants filed a motion to dismiss, and Plaintiffs replied. ECF Nos. 22,

25-27, & 58, ¶ 12. On March 31, 2020, Magistrate Judge A. Kathleen Thomlinson recommended that the motion to dismiss be denied, and her Report and Recommendation was adopted by District Judge Sandra J. Feuerstein on May 15, 2020. ECF Nos. 30 & 33.

From April 2020 through January 2021, the parties continued through additional discovery. ECF No. 58, ¶¶ 13-17. The parties largely completed fact discovery by November 2020 and then proceeded into depositions. *Id.* In November 2020, Defendants sought a pre-motion conference for leave to file a protective order, which Plaintiffs opposed. ECF Nos. 38 & 41. The parties ultimately came to an agreement that obviated the need for this order. ECF No. 58, ¶ 17. Subsequently, at a status conference on February 10, 2021, Defendants' counsel noted that Defendants intended to file a motion for summary judgment, and Judge Feuerstein allowed the motion to proceed and ordered a briefing schedule. ECF Nos. 46 & 58, ¶ 18.

On March 3, 2021, Defendants submitted an Offer of Judgement, pursuant to Fed. R. Civ. P. 68, to Plaintiffs in the amount of $50,001.00. ECF No. 58, ¶ 19. The parties also discussed but were unable to agree on attorney's fees and costs. *Id.* On March 8, 2021, Plaintiffs accepted the Offer of Judgment. *Id.* Plaintiffs accepted "[b]ecause we were faced with another period of expensive motion practice with an expensive trial thereafter, and because the matter had already mentally drained us." ECF No. 58, Ex. 1, ¶ 10. Plaintiffs filed their Notice of Acceptance of the Rule 68 Offer on March 9, 2021. ECF No. 48. On July 13, 2021, the Clerk's Judgment was Ordered for $50,001.00, exclusive of attorney's fees and costs. ECF No. 52.

From April 2021 to July 2021, counsel for Plaintiffs and Defendants attempted to resolve the outstanding issue of attorney's fees and costs but were unable to reach an agreement. ECF No. 58, ¶ 21. Specifically, Defendants offered approximately $61,500.00 and then later $66,500.00 in fees and costs, but Plaintiffs rejected both offers because they did not include the

outstanding money that Plaintiffs still owed to their counsel pursuant to the retainer arrangement and other fees. ECF No. 58, Ex. 1, ¶¶ 11-12. That dispute resulted in the instant motion before the Court.

**B. Plaintiffs' Claimed Attorney's Hours and Fees**

Plaintiffs initially requested that the Court award $89,400.00 in attorney fees based on a rate of $400 per hour for 223.50 hours through the date of the motion.[2] ECF No. 58, ¶¶ 41-42. However, in a later filing, Plaintiffs instead claimed 211.40 total hours (fewer than the original request) and sought a total of $84,560.00 in fees. ECF No. 63, ¶ 2. In response to the Court's Order regarding this numerical discrepancy, Plaintiffs agree that their earlier requests of 223.50 and 211.40 were mathematical errors, and now represent that 228.10 is the correct starting figure for invoiced fees in this case. ECF No. 66. Defendants do not disagree with that amount. ECF No. 67.

The Court has reviewed the invoices submitted by Plaintiffs in support of the requested fee award and agrees that the total baseline hours is 228.10 through September 1, 2021. ECF No. 58, Ex. 3.

**C. Plaintiffs' Claimed Costs**

Plaintiffs claim the following costs: (1) Westlaw Charges - $7,236.65; (2) Transcription Fees - $4,523.55; (3) Filing Fee - $400.00; (4) Duplications Fees - $249.79; and (5) Postage - $38.35. These costs total $12,448.34, substantially matching the backup provided in Plaintiffs' motion. *See* ECF Nos. 58, Exs. 3-4, & 63, ¶ 4.

**D. Defendants' Response**

In response to Plaintiffs' application, Defendants agree that Plaintiffs are entitled to legal

---

[2] Plaintiffs also request fees and costs incurred since the filing of the motion. ECF No. 58, p. 21.

fees, as well as the rate of $400 per hour for Mr. Snead. ECF No. 61, ¶¶ 4, 11. Instead, Defendants argue Plaintiffs' claimed fees and costs are excessive, and a total of $50,437.70 should be awarded.[3] *Id.* ¶ 43. Specifically, Defendants argue that fees should be reduced for the following reasons: (1) time entries are vague, excessive, and block billed; (2) clerical tasks should be paid at a lower rate; (3) travel time "must" be reduced to 50%; (4) costs should be reduced, as computer assisted legal research should be excluded; (5) unnecessary photocopying costs should be excluded; and (6) the outstanding balance owed to Plaintiffs should be excluded from recoverable attorney's fees.[4] *See* ECF Nos. 61, 62.

## II. Discussion

For the reasons detailed below, the Court finds that Plaintiffs are entitled to $87,380.00 in fees and $12,311.05 in costs, given Mr. Snead's substantial success and efforts in this case and that his hourly rate of $400 is appropriate in this District. Overall, Mr. Snead's invoiced time and costs were reasonable, although certain reductions are appropriate as discussed herein.

### A. Applicable Standard

"In the United States, parties are ordinarily required to bear their own attorney's fees" unless Congress has authorized the award of attorney's fees in a statute. *Buckhannon Bd. & Care Home, Inc., v. West Virginia Dept. of Health & Human Res.*, 532 U.S. 598, 602 (2001). Here, Congress has authorized such an award in 42 U.S.C. § 1988(b), which states: "[i]n an action or proceeding to enforce a provision of [Section 1983] . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." Further, "a

---

[3] Defendants also note that around the time of negotiations of the Rule 68 Offer of Judgment, Defendants offered to pay $61,231.57 in attorney's fees, which Plaintiff rejected. *Id.* ¶ 8.

[4] Defendants also argue Plaintiffs have failed to meet their burden in providing the necessity of an enhancement to the Lodestar figure. ECF No. 62, ¶ 33. This does not appear to be at issue, as Plaintiffs and Defendants agree on $400 per hour.

'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010).

The United States Supreme Court has explained that the "determination of fees should not result in a second major litigation. The fee applicant . . . must, of course, submit appropriate documentation to meet the burden of establishing entitlement to an award. But trial courts need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011) (internal quotation marks and citations omitted); *see also Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("[a] request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of the fee."). "The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So, trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox*, 563 U.S. at 838. Ultimately, "[t]he district court is given broad discretion in setting fee awards." *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 237 (2d Cir. 1987); *see Raja v. Burns*, No. 21-945, 2022 WL 3022527, at *3 (2d Cir. Aug. 1, 2022) ("The determination of an award of attorney's fees under 42 U.S.C. § 1988 is committed to the sound discretion of the district court because the appropriate amount is 'dependent on the unique facts of each case.'") (quoting *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)).

Where a party is entitled to fees, the district court calculates the "presumptively reasonable fee" by the "lodestar" method, which entails determining the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433; *see, e.g., Stanczyk v. City of N.Y.*, 752 F.3d 273, 284 (2d Cir. 2014); *Millea v. Metro-*

*North Railroad Co.*, 658 F.3d 154, 166 (2d Cir. 2011). In calculating a "presumptively reasonable fee," courts must consider a multitude of case-specific factors in order to establish a reasonable hourly rate that a "reasonable, paying client would be willing to pay," and then multiple that rate by the number of hours reasonably spent on the case. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183 (2d Cir. 2008).[5]

In order to determine whether the fees are reasonable, a court must evaluate the evidence submitted by the parties, including time records "that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998).

### B. <u>The Outstanding Balance of Fees and Costs</u>

Defendants raise a threshold issue as to whether Plaintiffs may claim fees that they have not yet paid to Mr. Snead. ECF No. 61, ¶¶ 33-37. Specifically, Defendants argue that the retainer agreement precludes Plaintiffs from claiming fees that they have not yet paid to Mr. Snead, citing to the following provision: "I will be making a fee award for my attorney's fees and time incurred on your behalf, out of which – if awarded – the attorney's fees you paid me will be reimbursed to you . . . [and] reimbursement would be available only for fees paid by you that are for services for which an award is given by the court."[6] ECF No. 58, Ex. 2, p. 2.

---

[5] The Second Circuit held that in determining a reasonable fee, courts should consider factors including "complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively[,] . . . the timing demands of the case, [and] whether an attorney might have an interest in achieving the ends of the litigation or might initiate the representation himself." *Arbor Hill*, 522 F.3d at 184. The Supreme Court has stated that "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)).

[6] In their Affidavit, Plaintiffs explain, "Mr. Snead offered to allow us to partially pay the hourly rates we agreed to in the Retainer Agreement until such time as a fee application could be made, deferring the payment from $400 per billed hour to $300 per hour. As part of this deferral arrangement [sic] we remain responsible for the entire hourly billing regardless of the outcome of this application. This arrangement has been honored by Mr. Snead throughout the balance of the litigation and copies of the invoices we have been sent and have paid which reflect that arrangement are provided with this Affidavit." ECF No. 58, Ex. 1, ¶ 7.

Relying on the quoted language from the agreement, Defendants argue that Plaintiffs should not be reimbursed for the amounts they have not paid to Mr. Snead, pursuant to the deferral accommodations Mr. Snead provided to Plaintiffs. *Id.*; ECF No. 58, Ex. 1, ¶ 7.

The Court is not persuaded that the claimed fees should be capped by what Plaintiffs already paid. Section 1988(b) does not mandate that attorney fee awards be limited to the amounts that the client already paid to counsel.[7] Further, Plaintiffs state in their Affidavit that they "remain responsible for the entire hourly billing regardless of the outcome of this application." ECF No. 58, Ex. 1, ¶ 7. Therefore, the Court will consider the entire fee application submitted by Plaintiffs, irrespective of what payments were made to date by Plaintiffs to Mr. Snead.

**C. Attorney's Fees**

The parties agree that attorney's fees are warranted in this case and that $400 per hour is a reasonable rate for Mr. Snead. ECF Nos. 58; 61, ¶ 11; & 62, ¶ 3. However, the parties disagree on the amount of fees that are reasonable in this case. For the reasons explained below, the Court finds that the claimed fees by Mr. Snead are generally reasonable, except for certain entries which should be reduced.

**1. Plaintiffs "Prevailed" in the Action**

Section 1988(b) states that a "court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." Courts have found

---

[7] Plaintiffs and Defendants both cite to *Sands v. Runyon*, 28 F.3d 1323 (2d Cir. 1994) in support of their respective positions on this point. ECF Nos. 62, p. 8, & 63, p. 10. Defendants also cite to *Parrish v. Sollecito*, 280 F. Supp. 2d 145 (S.D.N.Y. 2003) in support of their position for reducing fees pursuant to their interpretation of the retainer agreement. The Court disagree with Defendants' interpretation of these cases. The Courts in both cases considered the retainer agreement when determining whether *the hourly rates* were reasonable – an issue not disputed in this case. Neither case provides support for Defendants' position that the award of fees should be limited to amounts already paid to a party's attorney.

a "right to recover attorneys' fees under Section 1988 in the event that a case settles before trial." *Andrews v. City of New York*, No. 14-CV-1721, 2015 WL 5773961, at *2 (E.D.N.Y. Sept. 29, 2015). In the instant case, the settlement figure of $50,001.00 is substantial. *See Luongo v. 44-37 Rest. Corp*., No. 13-CV-7420, 2018 WL 1115697, at *2 (E.D.N.Y. Feb. 28, 2018) (awarding $72,873.41 in fees following a settlement of $45,500.00). Defendants do not dispute that Plaintiffs are entitled to fees and costs. ECF No. 62, ¶ 3.

**2. Reasonable Hourly Rates**

As noted above, the parties agree that the $400 hourly rate for Mr. Snead is reasonable given his experience, skill, and reputation. In fact, courts in this District have awarded a higher rate for attorneys with comparable experience. *See Thomas v. City of New York*, No. 14-CIV-7513, 2017 WL 6033532, at *5 (E.D.N.Y. Dec. 1, 2017) ("An hourly rate of $450 remains within the range of rates found reasonable for partners with twenty or more years of experience in this District."). Mr. Snead has demonstrated his significant experience in litigation, including municipal and agricultural law, to warrant a rate of $400 per hour. ECF No. 58, Exs. 5 & 6.

**3. The Claimed Fees Are Generally Reasonable**

The primary dispute at issue concerns the amount of fees that should be awarded. Defendants argue that Plaintiffs' fees should be reduced for vagueness, excessive billing, block billing, clerical tasks billed at an attorney's rate, and billed travel time at an attorney's rate. The Court addresses each of these arguments below.

**a. Vagueness**

Defendants argue that numerous entries are vague, including entries stating "draft," "edit," or "finalize." ECF No. 61, ¶¶ 20-21. A review of the invoices does not support Defendants' argument. Instead, the Court is able to determine the reasonableness of the hours

billed based on the invoiced time. *See Restivo v. Hessemann*, 846 F.3d 547, 590 (2d Cir. 2017) (finding that fees need not be reduced for claims of block billing, vagueness, and other challenged aspects, when the District Court is able to "conduct a meaningful review of the hours requested"), *cert. denied*, 138 S. Ct. 644 (2018).

**b. <u>Excessive Billing</u>**

Defendants argue that Plaintiffs' fees in numerous instances are excessive, with examples including 50.2 hours for the drafting of a complaint. ECF No. 61, ¶¶ 22-28. The Court does not agree that the 228.10 claimed hours in the submitted invoices are excessive. *See Morris v. Eversley*, 343 F. Supp. 2d 234, 248 (S.D.N.Y. 2004) (finding 712 hours reasonable for a case that lasted two years and ended with a trial); *Elliott v. Bd. of Educ. of Rochester City Sch. Dist.*, 295 F. Supp. 2d 282, 286 (W.D.N.Y. 2003) (finding 135 hours reasonable for a case that lasted one year before it settled).

**c. <u>Block Billing</u>**

Defendants argue that block billed tasks must be reduced where the time spent on each task cannot be determined. ECF No. 62, ¶¶ 22-23. However, block billing is generally not prohibited in the Second Circuit. *See Raja*, 2022 WL 3022527, at *6 (finding block billing was permissible when the Court was able to determine if time was reasonably billed); *Restivo*, 846 F.3d at 592 ("Although block billing is not preferred, it is permissible so long as the records allow the court to conduct a meaningful review of the hours requested"). A review of the invoices (with several exceptions noted below) reveals that the block billing in this case for the most part adequately describes the time entries.

**d. <u>Clerical Tasks</u>**

Defendants argue that certain tasks, such as "faxing," "filing," "photocopying," "drafting

affidavits of service," "sending," and "serving" are clerical tasks and should be billed at a reduced rate. ECF No. 61, ¶¶ 13-18 & 62, ¶¶ 16-18. Courts have found such reductions are appropriate. *See Lilly v. City of New York*, 934 F.3d 222, 234 (2d Cir. 2019) (finding that a reduction of a fee award was appropriate when clerical tasks were billed at an attorney's rate by a solo practitioner); *Smith v. City of New York*, No. 19-CV-6198, 2022 WL 939711, at *1 (E.D.N.Y. Mar. 28, 2022) (finding clerical tasks should be billed at $50 an hour); *Duke v. Cnty. of Nassau*, No. 97-CV-1495, 2003 WL 23315463, at *5 (E.D.N.Y. Apr. 14, 2003) ("it is unreasonable to reimburse lawyers at the same rate for performing clerical tasks as for performing substantive legal work, regardless of the size of the firm.").

The Court recognizes Mr. Snead is a solo practitioner and has sought to keep costs to a minimum in this case. ECF No. 63, ¶ 21. Furthermore, the Court is persuaded that Mr. Snead has included certain tasks such as "filing" and "serving" documents to the Court or counsel for recordkeeping purposes as he states, rather than for billing purposes; therefore, the Court will not reduce *all* fees for service, filing, and related arguably clerical tasks. ECF Nos. 61, ¶¶ 13-18; 62, ¶¶ 16-18; & 63, ¶ 18. However, the Court will reduce the following fee entries that include purely clerical tasks:

- 8/31/2018: "Finalize Complaint; draft Civil Cover Sheet; Draft summons" (4.8 hours). ECF No. 58, Ex. 3, p. 3. This entry should be reduced by 50%, given the incorporated clerical tasks ("draft Civil Cover Sheet and Draft summons"). Therefore, 2.4 hours should be reduced from the total sum of hours.

- 9/21/2018: "Obtain printed copies of complaint; prepare summons and complaint for service" (1.9 hours). ECF No. 58, Ex. 3, p. 3. This entry should be billed at a reduced rate, given that it is clerical and included some travel. ECF No. 63, ¶ 20. It should be billed at approximately 0.4 attorney hours. Therefore, 1.5 hours should be reduced from the total sum of hours.

- 9/24/2018: "Travel to Village of Lynbrook and serve Village and employees; travel to office of Peter Lediwith, Esq. and serve complaint; travel to Queens Co. Farm Museum and personally serve W. Blohm; return travel; draft affirmation of

> service and file with court." (3.1 hours). ECF No. 58. Ex. 3, p. 3. As Mr. Snead has explained, his service likely cost less than hiring process services. Nevertheless, drafting the affirmation of service and filing were clerical (which he totals for 0.5 hours). ECF, No. 63, ¶ 21. Therefore, 0.5 hours should be reduced from the total sum of hours.

As a result of these reductions for certain clerical tasks discussed above, the Court reduces 4.4 hours from the total number of attorney hours submitted by Plaintiffs.

**e. <u>Travel Fees</u>**

Finally, Defendants argue that Plaintiffs request impermissibly high attorney travel fees and argue the travel fees should be reduced by 50%. ECF Nos. 62, ¶ 21 & 61, ¶¶ 13-18. Courts in this District have held that "time charged by an attorney for travel will be reimbursed at half of the attorney's hourly rate." *Access 4 All, Inc. v. 135 W. Sunrise Realty Corp.*, No. CV 06-5487, 2008 WL 4453221, at *13 (E.D.N.Y. Sept. 30, 2008); *see, e.g., Duke v. County of Nassau*, No. 97-CV-1495, 2003 WL 23315463, at *5 (E.D.N.Y. Apr. 14, 2003) ("[A]ll time entries which account for travel time will be compensated at fifty percent of the attorney's general billing rate.").

The Court agrees that Plaintiffs' attorney's fees for traveling should be reduced by 50% in this case. Plaintiffs include calculations for the travel to and from the Central Islip Courthouse in Invoice 2317, noting that such trips (although included in the block billing) were approximately 0.6 for each trip. ECF No. 63, ¶ 22. Therefore, the Court subtracts 0.6 hours from the total hours figure to reduce these travel fees by 50% (0.3 for each trip). Moreover, the Court subtracts 0.9 hours (half the 1.8 hours estimated by Plaintiff) for the travel to and from the Queens County Museum. *Id.* ¶ 23. Finally, the Court subtracts 3.75 hours from the total for travel to and from the depositions, listed in Invoice 2417, given Plaintiffs' estimation of 7.5 hours for the total time of these trips. *Id.* ¶ 15. As a result of these reductions for travel time

(totaling 5.25 hours) and the reductions for clerical discussed above (totaling 4.4 hours), the Court reduces 9.65 hours from the total number of attorney hours submitted by Plaintiffs.

**f. <u>Total Hours and Fees</u>**

Plaintiffs' submissions to the Court vary as to the total number of attorney hours at issue – 223.5 (per the original motion), 211.40 (per the reply), and 228.10 (per the underlying invoices and letter to the Court). ECF Nos. 58, ¶¶41-42; 63, ¶ 2; & 66. In light of this variance, the Court will rely upon the invoices as the most accurate evidence and the 228.10 hours set forth therein. After subtracting 9.65 hours as discussed above, the Court finds that 218.45 hours should be considered for the fee award calculation. The Court, therefore, finds Plaintiffs are entitled to $400 in hourly fees for 218.45 hours, totaling $87,380.00.

**D. <u>Costs</u>**

With respect to claimed costs, Plaintiffs request $7,236.65 in Westlaw charges,[8] $4,523.55 in transcription fees, $400.00 in filing fees, $249.79 in duplication fees, and $38.35 in postage.[9] ECF No. 63, ¶ 4. Defendants challenge the costs, including the computer assisted legal research (Westlaw charges), duplication fees, and $88.00 for transcript copies. ECF No. 61, ¶¶ 29-32, 41.

"Courts have identified the following non-exhaustive list of expenses as those ordinarily charged to clients, and therefore, recoverable: photocopying, travel, telephone costs, and postage." *Marisol A. ex rel. Forbes v. Giuliani*, 111 F. Supp. 2d 381, 401 (S.D.N.Y. 2000). With respect to the Westlaw charges, Plaintiffs' counsel explains his method of calculation,

---

8 This figure from Plaintiffs' reply differs from Plaintiffs' initial motion (requesting $6,878.53), which appears to have not included all invoiced research costs. *See* ECF No. 58, ¶ 43.

9 This figure differs slightly from Plaintiffs' initial motion, requesting $40.75 (which may have included incorrect charges), but appears to be the correct sum. *See* ECF No. 58, ¶ 43.

noting he pays a flat fee each month and limits his fees charged to clients to $850 for a daily fee. ECF No. 58, ¶ 40. The Court finds that these fees are properly documented and recoverable. *See Lewis v. Am. Sugar Ref., Inc.*, No. 14-CV-02302, 2019 WL 116420, at *7 (S.D.N.Y. Jan. 2, 2019); *Hargroves v. City of New York*, No. 03-CV-1668, 2014 WL 1270585, at *22 (E.D.N.Y. Jan. 6, 2014), *report and recommendation adopted*, No. 03-CV-1668, 2014 WL 1271039 (E.D.N.Y. Mar. 26, 2014).

Defendants challenge the $249.73 in duplication fees as excessive. ECF No. 61, ¶ 31. Plaintiffs explain that the photocopying on Invoice 2233 was done at Staples at a rate of $0.25 per page. However, the reimbursement rate in this District is roughly $0.10 per page. *See United States v. City of New York*, No. 07-CV-2067 (NGG) (RLM), 2013 WL 5542459 (E.D.N.Y. Aug. 30, 2013). Given that Plaintiff photocopied 1,125 pages, the Court recommends an award of $112.50 in photocopying costs consistent with the reimbursement rate in this District. ECF No. 63, ¶ 42.

Defendants also dispute $88.00 in duplication fees, arguing that they were unnecessary. ECF No. 61, ¶¶ 31-32. However, as explained in Plaintiffs' Reply, the transcription costs were a flat rate (and not charged per page), and the Court finds they are reimbursable as requested by Plaintiffs. ECF No. 63, ¶¶ 45-46.

Consequently, the Court recommends that Judge Azrack award a total of $12,311.05 in costs ($7,236.65 in Westlaw charges, $4,523.55 in transcription fees, $400.00 in filing fees, $112.50 in duplication fees, and $38.35 in postage). ECF No. 63, ¶ 4.

**E. <u>Plaintiffs' Request for Fees on the Instant Motion and Reply</u>**

Plaintiffs may be entitled to reasonable fees and costs incurred on the instant application under certain circumstances and may seek leave from the Court for fees incurred since

September 1, 2021. *See Hines v. City of Albany*, 862 F.3d 215, 223 (2d Cir. 2017) ("Prevailing parties under Section 1988 are, therefore, entitled to recover a *reasonable* fee for preparing and defending a fee application.") (emphasis added); *Gagne v. Maher*, 594 F.2d 336, 343–44 (2d Cir. 1979) (explaining that "time reasonably spent by plaintiff's attorneys in establishing their fee would be compensable" but noting that the district courts have "great leeway" and discretion in this regard), *aff'd*, 448 U.S. 122 (1980); *HomeAway.com, Inc. v. City of New York*, No. 18 CIV. 7742, 2021 WL 791232 at *594 (S.D.N.Y. Mar. 1, 2021) (awarding fees for an instant fee application); *cf. Lilly*, 934 F.3d at 235 (limiting attorneys' fees to the Rule 68 offer of judgment, due to the wording of the parties' agreement); *Goodman v. Heublein, Inc.*, 682 F.2d 44, 48 (2d Cir. 1982) (denying additional fees after an appeal, stating that the case "has gone on long enough").

## III. Conclusion

For the foregoing reasons, this Court respectfully recommends that the motion be granted in part to award Plaintiffs attorney's fees of $87,380.00 and costs of $12,311.05 for a total of $99,691.05.

Plaintiffs may seek leave from the Court to file a supplemental motion substantiating reasonable fees and costs incurred in this matter since September 1, 2021.

**SO ORDERED:**

Dated: Central Islip, New York
August 11, 2022

s/ Lee G. Dunst

LEE G. DUNST
United States Magistrate Judge